21-mj-2253-MBB

**AFFIDAVIT OF FBI SPECIAL AGENT MARK J. STEPHENSON**
**IN SUPPORT OF CRIMINAL COMPLAINT**

I, Special Agent Mark J. Stephenson, being sworn, state as follows:

**INTRODUCTION**

1.      I have been a Special Agent with the Federal Bureau of Investigation ("FBI") since July, 2017.  I am assigned to the Metro Boston Gang Task Force of the FBI's Boston Division ("MBGTF"), where I conduct complex criminal enterprise investigations against violent criminals involved in a myriad of criminal activities to include the illegal distribution of narcotics, firearms trafficking, and associated violent crimes. In the course of participating in investigations as it relates to drug trafficking, I have conducted or participated in surveillance; the controlled purchase of illegal drugs; the execution of search warrants; debriefings of subjects, witnesses, and informants; wiretaps; and reviews of consensually recorded conversations and meetings. I have also received training through my position as an FBI Special Agent involving narcotics trafficking. Through my training, education, and experience, I have become familiar with the manner in which drug traffickers conduct their illegal drug trafficking activity, to include their use of cellular telephones to contact drug customers, drug runners, drug associates, and sources of illegal drug supply.  I am familiar with narcotics traffickers' methods of operation, including distribution, storage, and transportation of narcotics.

2.      Based on my training and experience as a Special Agent, I am familiar with federal narcotics laws. I know that it is a violation of Title 21 United States Code, Section 841(a)(1), for any person to knowingly or intentionally to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance. I know that it is a violation of 21 U.S.C. § 846, for any person to conspire to violate the drug laws.  I know that it is a violation

1

of 18 U.S.C. §§ 1956 and 1957 to launder money and engage in monetary transactions in property derived from specified unlawful activity.

3.      I am also familiar with the manners and means commonly employed by drug traffickers and drug trafficking organizations to conduct their illegal activities, including purchasing, manufacturing, storing, and distributing controlled substances, the laundering of illegal proceeds, and the efforts of persons involved in such activities to avoid detection by law enforcement.  I am further familiar with the terminology and slang commonly employed by drug traffickers.  I have observed and examined cocaine, cocaine base ("crack"), heroin, and fentanyl, as well as other controlled substances.  I am aware of the street prices for these substances, the methods of packaging, and the jargon used in the drug trade.

## PURPOSE OF AFFIDAVIT

4.      I submit this affidavit in support of a Criminal Complaint charging London LEE ("LEE"), date of birth xx/xx/1993, and Josiah E. WATKINS ("WATKINS"), DOB: xx/xx/1996, with violating Title 21 U.S.C. § 841(a)(1) (possessing with intent to distribute, and distributing, cocaine base and fentanyl) and 21 U.S.C. § 846 (conspiracy to distribute, and possess with intent to distribute, cocaine base and fentanyl).

5.      I am familiar with the facts and circumstances of this investigation from my own personal participation and from oral and written reports made to me by agents of the FBI and other federal, state and local law enforcement agencies.

6.      I submit this affidavit for the limited purpose of establishing probable cause to believe LEE and WATKINS have committed the above offenses.  Accordingly, I have not included each and every fact known to me and other law enforcement officers involved in this investigation. I have set forth only the facts that I believe are needed to establish the requisite probable cause.

## THE INVESTIGATION

7.      Since February 2021, members of the FBI and the Boston Police Department ("BPD") have been investigating drug trafficking by LEE and WATKINS in the Boston area of Massachusetts.  This investigation has revealed that LEE and WATKINS are actively selling crack cocaine and fentanyl, in the Boston area, at least as early as February, 2021.

8.      During this investigation, LEE and WATKINS has met an FBI cooperating witness ("CW-1") at predetermined locations, where they have sold crack cocaine and fentanyl to CW-1. CW-1 has a criminal history that includes prior arrests for assault and battery with a dangerous weapon, breaking and entering, and distribution of a Class A substance.  CW-1's cooperation is financially motivated and CW-1 is being paid for his/her services and information provided.

9.      In addition to the April 2, 2021 controlled purchases outline below, numerous other controlled purchases have been made during this investigation from LEE, WATKINS, and runners dispatched by LEE on various dates in 2021.  On February 25th and March 9th, CW-1 arranged with LEE for the sale of crack cocaine, and subsequently purchased the drugs from runners. On at least seven dates in March and April of 2021, CW-1 purchased crack cocaine and fentanyl directly from LEE.  On an additional date in April of 2021, CW-1 purchased crack cocaine and fentanyl directly from WATKINS.  To date, approximately 106.4 grams of crack cocaine and 184.2 grams of fentanyl have been seized by investigators.

## CONTROLLED PURCHASES ON APRIL 2, 2021

10.     On April 2, 2021 investigators conducted a controlled purchase of cocaine from LEE, using CW-1, who had been communicating with LEE in the preceding 24 hours through a series of phone calls and text messages.  During these communications, LEE agreed to sell CW-1

approximately 7 grams of crack cocaine and 20 grams of fentanyl.  CW-1 coordinated the transaction through this series of communications with LEE's phone.

11.     After these communications between LEE and CW-1 concluded, law enforcement officers utilized a standard set of procedures whereby they searched CW-1 and his/her vehicle for contraband with negative results[1].  Law enforcement officers provided CW-1 with an agreed-upon amount of official agency funds ("OAF") to complete the drug purchase.  CW-1 was also provided with an audio/video recording device and a transmitter, which recorded the controlled purchase. Law enforcement officers then surveilled CW-1 to the pre-arranged meeting location.

12.     While under the direction and physical surveillance of law enforcement officers, CW-1 met with LEE in a public place in Boston, MA, in the vicinity of his residence, a nearby apartment building.  LEE was observed exiting the apartment building and walking a short distance to CW-1. When LEE arrived, he entered CW-1's motor vehicle and handed CW-1 one (1) clear plastic bag containing an off-white, rock-like substance and one (1) bag containing an off-white powder substance in exchange for U.S. Currency.  After the transaction, LEE exited CW-1's motor vehicle, he entered the passenger side front door of a white Lexus IS and drove away from the area.

13.     After CW-1 left the meeting location, law enforcement officers surveilled CW-1 to a predetermined location.  During the debriefing of CW-1, agents learned that during the transaction, LEE sold crack cocaine and fentanyl to CW-1, in exchange for the OAF.  LEE also informed CW-1 that he was "short" on the amount of fentanyl for the transaction, and that he was re-supplying and needed approximately one hour to provide the full amount.  At this point, CW-1

---

[1]During several of the controlled purchases during this investigation, CW-1 has shown law enforcement officers that he/she had a specific amount of his/her own money on his/her person, in addition to the OAF that was provided to CW-1.  On each occasion, this dollar amount was observed and documented before and after the controlled purchase, and CW-1 was allowed to keep his/her own money on his/her person.

provided law enforcement officers with the plastic bags of suspected narcotics. Law enforcement officers then searched CW-1 again, with negative results.

14.     On this date, LEE delivered approximately 8.3 grams of suspected crack cocaine and approximately 9.7 grams of suspected fentanyl in exchange for $750.  The one (1) clear plastic bag containing an off-white, rock-like substance and one (1) bag containing an off-white powder substance field tested positive for the presumptive presence of cocaine and fentanyl, respectively. Based on my training and experience, as well as that of other agents familiar with this investigation, the off-white rock-like substance appeared to be cocaine base, also known as "crack cocaine," and the off-white powdered substance appeared to be fentanyl, respectively.  Additionally, I believe this based on various factors, including the information learned during the course of this investigation and the packaging, size, shape & color of the substances.  The suspected crack cocaine and fentanyl have been sent to the Drug Enforcement Administration, Northeast Laboratory for additional testing.

15.     Later that same day, on April 2, 2021, LEE communicated again with CW-1 using his phone.  During this communication LEE agreed to sell the remaining fentanyl to CW-1.  LEE again directed CW-1 to go to the same location, a public place in Boston, MA, in the vicinity of his residence, a nearby apartment building.

16.     Following these communications between LEE and CW-1, law enforcement officers again followed the above-described procedures with negative results, provided CW-1 with an agreed-upon amount of OAF for the drug purchase, and followed CW-1 to the pre-arranged meeting location.  In an additional communication, LEE informed CW-1 that he was sending someone out to complete the purchase.

17.     While under the direction and physical surveillance of law enforcement officers, CW-1 met with WATKINS in the same location, a public place in Boston, MA, in the vicinity of LEE's residence, a nearby apartment building.  WATKINS was observed exiting the same apartment building and walking a short distance to CW-1.  When WATKINS arrived, he entered CW-1's motor vehicle and handed CW-1 one (1) bag containing an off-white powder substance in exchange for U.S. Currency.  After the transaction, WATKINS exited CW-1's motor vehicle and entered the front door of the apartment building.

18.     After CW-1 left the meeting location, law enforcement officers surveilled CW-1 to a predetermined location.  During the debriefing of CW-1, agents learned that during the transaction, WATKINS sold fentanyl to CW-1, in exchange for the OAF.  At this point, CW-1 provided law enforcement officers with the plastic bag of suspected fentanyl. Law enforcement officers then searched CW-1 again, with negative results.

19.     On this date, WATKINS delivered approximately 15.0 grams of suspected fentanyl in exchange for $350.  The one (1) bag containing an off-white powder substance field tested positive for the presumptive presence of fentanyl.  Based on my training and experience, as well as that of other agents familiar with this investigation, the off-white powdered substance appeared to be fentanyl.  Additionally, I believe this based on various factors, including the information learned during the course of this investigation and the packaging, size, shape & color of the substances.  The suspected fentanyl has been sent to the Drug Enforcement Administration, Northeast Laboratory for additional testing.

## CONCLUSION

20.     Based on the foregoing, there is probable cause to believe that on April 2, 2021, LEE and WATKINS did knowingly and intentionally possess with intent to distribute, and

distribute, cocaine base and fentanyl, in violation of Title 21, United States Code, Section

841(a)(1), and did conspire to distribute, and possess with intent to distribute, cocaine base and

fentanyl, in violation of Title 21, United States Code, Section 846.

I declare the foregoing is true and correct.

Mark J. Stephenson
SPECIAL AGENT, FBI

Signed electronically and sworn to via telephone in accordance with Federal Rule of
Criminal Procedure 4.1 on this 28th day of April, 2021.

HON. MARIANNE B. BOWLER
United States Magistrate Judge